IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMY K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-1455-RJD[2] |
| | ) | |
| COMMISSIONER of SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for disability insurance benefits pursuant to 42 U.S.C. § 423.

## Procedural History

In September 2022, Plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of May 6, 2022. Tr. 27. After holding an evidentiary hearing on May 31, 2024, ALJ Daniel Luker denied the application on June 17, 2024. Tr. 27, 43. On May 29, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff appealed to this Court.

## Applicable Legal Standards

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 13.

applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4) An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability. *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted). However, the undersigned does not act as a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v.*

*O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

**The Decision of the ALJ**

The ALJ followed the required five-step analytical framework. Tr. 27-43. He determined that Plaintiff had not engaged in substantial gainful activity since May 6, 2022 (the alleged onset date). Tr. 29. He determined that Plaintiff had the following severe impairments: diabetes mellitus, neuropathy in the legs and feet and hands, posttraumatic stress disorder, anxiety, extreme depression, fibromyalgia, hypothyroidism and thyroid removal, hysterectomy, and obesity. Tr. 29. However, he found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the applicable regulations. Tr. 31.

The ALJ determined that Plaintiff had the following RFC:

> [She can] perform light work as defined in 20 CFR 404. 1567(b) except she should not walk more than occasionally and should be allowed to change positions from standing to seated for 10 minutes out of every hour. She further should never climb ladders, ropes, or scaffold, and no more than occasional climbing of ramps and stairs, balance on uneven ground, kneel, crouch, and crawl. She can perform no more than frequently handle and finger bilaterally. She further is able to perform simple tasks learned within 30 days or less but should have no more than occasional contact with the general public, but may have frequent contact with coworkers and supervisors. Further even considering these limitations claimant is expected to be off task 5% of the work day.

Tr. 33. Plaintiff could not perform any past relevant work. Tr. 41. The ALJ concluded that considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 41.

## The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

**1. Medical records**

In October 2019, Plaintiff was hospitalized for one night related to "uncontrolled diabetes." Tr. 490. She reported "intermittent numbness and tingling in all extremities." Dr. Vandeveer (primary care practitioner) noted this was 'likely beginning of neuropathy due to uncontrolled diabetes." Tr. 493. In May and June 2020, Plaintiff presented twice to the emergency room for complaints of pain in her legs and feet related to neuropathy. Tr. 606, 619. Plaintiff presented to the Mayo Clinic in July 2020 for evaluation of "pins and needles and shooting pains" in her arms and feet. Tr. 356. She underwent an EMG and the neurologist's impression was "(1) painful length-dependent sensory and motor peripheral neuropathy, likely related to diabetes mellitus; (2) exacerbation of the pain after starting insulin, suspicious of a component of 'insulin neuritis'; (3) chronic fatigue: and (4) anxiety disorder." Tr. 353-54. Plaintiff's medical records through 2024 reflect that Plaintiff consistently reported neuropathic pain to her primary care practitioner The medical records reflect that from 2019-2024, Plaintiff consistently reported neuropathic pain in her feet and hands. Tr. 356, 462, 474, 479, 491, 493, 500, 507, 511, 606, 619, 635, 774,777, 784, 790. She tried multiple medications: Gabapentin, Tramadol, Norco, Cymbalta, marijuana, and Lyrica. Tr. 474, 777.

In April 2023, Plaintiff underwent a consultative exam with Dr. James Gatton. Tr. 523. He noted that she had no difficulty making manipulative movements with her right and left hands. Tr. 525. She had 5/5 strength in her upper and lower extremities. Tr. 525. Plaintiff returned to Dr. Gatton in October 2023. She reported that "her symptoms have gotten progressively worse,

and she experiences numbness and burning in her hands and feet." Tr. 584. Dr. Gatton noted that her "fine fingering is normal and her gross grip is 5/5 bilaterally." Tr. 585. She again had 5/5 strength in the upper and lower extremities. Tr. 585.

**2. Medical Opinions**

When Dr. Gatton (state agency consultative exam) first saw Plaintiff in April 2023, he opined that she "should be able to walk for 2.5-3.5 hours out of an eight hour work day" and "probably could carry less than 10 pounds frequently and carry more than 20 pounds on occasion." Tr. 525. She could handle objects normally. Tr. 525. When Plaintiff returned to Dr. Gatton five months later, he opined that she "probably could carry less than 10 pounds frequently and could carry more than 15 pounds on occasion." Tr. 585. She could walk between two and three hours a day. Tr. 585. The ALJ found Dr. Gatton's opinions to be "partially persuasive" and "not entirely consistent in all areas of the examination and opinion." Tr. 36.

State agency psychological consultants opined that Plaintiff had moderate limitations in interacting with others. Tr. 96 and 107. At the initial level of the application process, the consultant also opined that Plaintiff had moderate limitations in accepting criticism and responding to instruction from supervisors. Tr. 100.

**3. Evidentiary Hearing**

The ALJ held a hearing on May 31, 2024. Tr. 40. Plaintiff testified that her neuropathy keeps her from using stairs regularly, as she fears that she will trip and fall. Tr. 63. When Plaintiff walks, she shuffles her feet. Tr. 75. She has severe neuropathy in her feet; sometimes when she is driving, her feet will go numb. Tr. 65. The neuropathy in her hands makes it difficult to switch gears, even in an automatic vehicle. Tr. 64. Plaintiff can stand for 15 minutes and

then must sit. Tr. 76. If she tries to walk for thirty minutes, she is "very exhausted.' Tr. 76. If she tries to lift 10 pounds more than five times, her hands and arms go numb and she feels tingling pain. Tr. 76. When she tries to do crafts, she's "always dropping something." Tr. 77. She cannot open a water bottle. Tr. 80.

Plaintiff sees a counselor for her anxiety and depression, but she has no insurance and must borrow money from her mother for treatment. Tr. 78. She frequently cries and feels mentally fatigued. Tr. 78. She needs help with housework and performing hygiene. Tr. 78-79. She needs to use a CPAP machine for sleep apnea but cannot afford it.

Plaintiff worked as the director assistant of environmental services at the hospital; she referred to environmental services as "housekeeping." Tr. 66. As the director assistant, Plaintiff supervised thirty employees. Tr. 69. At times, she had to lift between 20-40 pounds and was sometimes on her feet for 24 hours. Tr. 68-69. She had to leave this position because of her health conditions. Tr. 71. She then worked as a staff assistant for a real estate sales team. Tr. 69-70. She had to leave this position because at times, her neuropathy prevented her from walking into homes. Tr. 71. Her last employment was in food services at a hospital. Tr. 66. For that job, she was on her feet eight hours a day. Tr. 67. She prepared meal trays, delivered the trays to patients, and washed dishes. Tr. 66. Plaintiff had to leave this job because of the neuropathy in her hands; her inability to perform her job quickly made her anxious and depressed. Tr. 72.

Plaintiff currently takes Lyrica for her neuropathy; "it kind of eases" her pain. Tr. 74. She previously took Gabapentin, which was less effective than Lyrica. Tr. 74, 75.

The ALJ posed the following hypothetical to the vocational expert:

> …light exertional category….should not walk more than occasionally and should be allowed to change positions from

> standing to seated for ten minutes out of every hour.… never use ladders, ropes, or scaffolds; should no more than occasionally use ramps and stairs, balance on uneven ground, kneel, crouch, crawl; should no more than frequently handle and finger bilaterally; and is… limited to simple tasks, which can be learned in 30 days or less and…have no more than occasional contact with the general public and may have frequent contact with coworkers and supervisors.

Tr. 86. The vocational expert testified that the individual could not perform Plaintiff's past work. Tr. 86. The individual could work as a marker, router, and routing clerk (all light jobs). Tr. 85, 86. The individual could be absent one time a month (including coming in late, leaving early, and missing the entire day) but a total of seven times a year. Tr. 89. The individual could not work if she took one unscheduled break per day of 15 minutes. Tr. 90. If the individual could only occasionally handle and finger, there would be no significant work in the national economy that she could perform. Tr. 87.

## Analysis

First, Plaintiff argues that the ALJ failed to evaluate or even mention Plaintiff's sworn testimony. The Court disagrees; the ALJ summarized Plaintiff's testimony regarding her mental and physical symptoms. Tr. 34. The ALJ also rejected an opinion by the state agency medical consultant that Plaintiff could stand or walk six hours in an 8-hour work day because the consultant "did not have the benefit of…claimant's testimony regarding her degree of impairments. Tr. 40.

While the ALJ included references to Plaintiff's testimony in the decision, the Court agrees that the ALJ failed to meaningfully evaluate Plaintiff's testimony such that the RFC determination is supported by substantial evidence. Despite her diagnosis from the Mayo Clinic and years of consistently reporting neuropathy in her extremities, the ALJ found that Plaintiff could nonetheless perform light work and frequently handle/finger bilaterally, but provides no explanation for this

finding. The ALJ's evaluation of Dr. Gatton's findings does not help build the bridge to the RFC. After performing a consultative exam, Dr. Gatton opined that Plaintiff could handle objects normally and carry less than ten pounds frequently. The ALJ noted that Dr. Gatton's opinions were "not entirely consistent" but "generally consistent with the record and other examinations." The ALJ does not explain which opinions were "not entirely consistent" and which were "generally consistent" with the record, nor does he cite or reference medical records that reflect Plaintiff's ability to handle objects normally and carry less than ten pounds. Instead, after finding that "support for the claimant's allegation [of her symptoms] is lacking in the record", the ALJ simply cites to a single line on one page of a November 2022 office visit that states Plaintiff had "decreased sensation bilateral lower extremity." Tr. 39, 508.

Upon reviewing Dr. Gatton's records, state agency medical consultants found that Plaintiff could frequently perform gross and fine manipulation with her hands. Tr. 98, 109. However, the ALJ rejected those same consultants' opinion regarding Plaintiff's ability to walk during the workday because the consultants did not have access to Plaintiff's most recent medical records and testimony. Tr. 40. Plaintiff's 2024 medical records and testimony reflected that taking Lyrica improved her pain (Tr. 74, 777), but she testified that her neuropathy nonetheless continued to hinder her ability to dress herself, drive, and open a water bottle, just as she testified to her difficulty walking. To the extent that the ALJ believed Plaintiff's testimony regarding her ability to walk but not her ability to grasp and hold objects, he failed to explain why. The doctor who noted that Plaintiff's burning and tingling had improved with Lyrica did not specify whether the Lyrica helped with all of her neuropathic pain, or just the pain in her hands (and not her feet), nor did the doctor indicate whether Lyrica increased her ability to use her extremities. Tr. 777.

Plaintiff also argues that the ALJ failed to assess the "supportability and consistency" of opinions by the state agency psychological consultants, as required by the regulations. 20 C.F.R. § 404.1520c(c). For example, the initial consultant found that Plaintiff was moderately limited in her ability to receive criticism and instructions from her supervisor. The ALJ did not discuss this specific opinion or identify the weight given to the initial consultant's opinions. Tr. 40. As for the consultant who provided opinions at the reconsideration level, Plaintiff notes that the ALJ merely stated the opinions were "consistent with the longitudinal record" with no explanation for the purported consistency. Defendant argues that these omissions were harmless because the ALJ determined Plaintiff had greater restrictions than those assessed by the consultants. The Court is not convinced the omissions were harmless, as the ALJ determined Plaintiff could have frequent interactions with her supervisor and it is not clear whether this determination accounted for Plaintiff's moderate limitation in receiving instructions/criticism from her supervisor, or if the ALJ disagreed that Plaintiff had such a limitation.

Finally, Plaintiff argues that the ALJ failed to evaluate her social limitations. Plaintiff supports this argument with points already made regarding the ALJ's assessment of the opinions by the state agency psychological consultants. Plaintiff also notes that the ALJ failed to consider statements made in Plaintiff's function report regarding her temper. The ALJ is not required to discuss every piece of evidence. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(internal citations omitted). Overall, however, the ALJ failed to support the RFC with substantial evidence, and therefore this case must be REMANDED.

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying

Plaintiff's application for disability insurance benefits is therefore REVERSED AND REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 25, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**